# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **MICHAEL C. WRIGHT,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04cv00103 |
| | ) | **MEMORANDUM OPINION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Michael C. Wright, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

-1-

than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Wright filed his application for DIB on or about January 11, 2003, alleging disability as of December 28, 2002, based on lower back problems, joint stiffness and anxiety. (Record, ("R."), at 51-53, 62.) The claim was denied initially and upon reconsideration. (R. at 21-23, 29, 31-33.) Wright then requested a hearing before an administrative law judge, ("ALJ"). (R. at 34.) The ALJ held a hearing on November 14, 2003, at which Wright was represented by counsel. (R. at 233-59.)

By decision dated May 27, 2004, the ALJ denied Wright's claim. (R. at 12-18.) The ALJ found that Wright met the disability insured status requirements of the Act through December 31, 2007. (R. at 17.) The ALJ found that Wright had not engaged in substantial gainful activity since December 28, 2002. (R. at 17.) The ALJ also found that the medical evidence established that Wright suffered from severe impairments, namely lumbar spondylosis and major depressive disorder, but he found that Wright did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ found that Wright's allegations were not totally credible. (R. at 17.) The ALJ found that Wright retained the residual functional capacity to perform medium

work[1] that did not require climbing or more than limited reaching with the nondominant left arm, that involved only occasional stooping, kneeling, crouching or crawling and could be done by an individual with the mental limitations as set out in the assessment of Robert S. Spangler, Ed.D. (R. at 18.) Thus, the ALJ found that Wright could not perform any of his past relevant work. (R. at 18.) Based on Wright's age, education and work history and the testimony of a vocational expert, the ALJ concluded that Wright could perform jobs existing in significant numbers in the national economy, including those of a signaler, a laundry worker, a coal sampler, a photograph finisher and a parking lot worker. (R. at 18.) Thus, the ALJ found that Wright was not disabled under the Act and was not eligible for DIB benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(g) (2004).

After the ALJ issued his decision, Wright pursued his administrative appeals, (R. at 7), but the Appeals Council denied his request for review. (R. at 4-6.) Wright then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2004). The case is before this court the Commissioner's motion for summary judgment filed February 7, 2005.

## *II. Facts*

Wright was born in 1958, (R. at 51), which classifies him as a "younger person" under 20 C.F.R. § 404.1563(c). Wright has a high school education and past work experience as a coal miner. (R. at 63, 68, 74, 236.)

---

[1]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c) (2004).

Wright testified that he suffered from knee and back pain. (R. at 239, 241.) He stated that he could stand for up to 30 minutes without interruption, walk for up to 30 minutes without interruption and sit for up to 30 minutes without interruption. (R. at 239-40, 249.) He stated that he was easily aggravated and upset. (R. at 245.) Wright stated that he could lift and carry items weighing less than 10 pounds. (R. at 248.)

James Williams, a vocational expert, also was present and testified at Wright's hearing. (R. at 251-58.) Williams stated that there were jobs in the coal mining industry that were considered light work.[2] (R. at 253.) He stated that such jobs included a tipple dump operator, a dinky motorman, a long wall mining machine tender and a ventilation equipment tender. (R. at 253.) Williams was asked to consider a hypothetical individual of Wright's age, education and skill level, who could perform medium work and who could not climb. (R. at 254.) He indicated that Wright had transferable skills to perform work as a roof bolter, a shuttle car operator and a scoop operator. (R. at 254.)Williams testified that there were no jobs available that such an individual could perform if he were limited as indicated by Dr. Michael Clary's assessment. (R. at 143-46, 255-56.) Williams also testified that there would be no jobs available that the same individual could perform should he be limited as set out in the assessments of Dr. Michael Clary, D.O., and John W. Ludgate, Ph.D. (R. at 143-46, 149-52, 257.)

In rendering his decision, the ALJ reviewed records from Dr. Michael Clary, D.O.; Dr. Dennis Aguirre, M.D.; Dr. Ronald L. Hedderich, M.D.; Dr. Randall Hays,

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b) (2001).

M.D., a state agency physician; John W. Ludgate, Ph.D., a licensed clinical psychologist; Dr. John Whiteley, M.D.; and Robert S. Spangler, Ed.D., a licensed psychologist.

On August 6, 2002, Wright saw Dr. Michael Clary, D.O., for complaints of soreness in his lower back, which had been present for years. (R. at 141-42.) X-rays of Wright's lumbar spine showed spondylolysis at the L5 level. (R. at 140.) Dr. Clary diagnosed lower back pain with radiculopathy. (R. at 141.) He recommended that Wright exercise and walk daily and decrease his weight. (R. at 141.) Wright complained of intermittent back pain on August 21, 2002. (R. at 139.) On September 10, 2002, Wright complained of back pain, which radiated into his legs. (R. at 138.) Dr. Clary reported that Wright had lumbar tenderness with spasm and positive straight leg raising. (R. at 138.) An MRI of Wright's lumbar spine showed bulging of the annulus at the L5-S1 level. (R. at 137.) Dr. Clary diagnosed persistent lower back pain, spondylolysis with radiculopathy. (R. at 138.) On October 8, 2002, Wright complained of low back pain and left shoulder pain. (R. at 136.) Dr. Clary reported that Wright had lumbar tenderness and positive straight leg raising. (R. at 136.) He was diagnosed with lower back pain, spondylolysis, herniated disc with radiculopathy and left shoulder pain. (R. at 136.) Dr. Clary referred Wright to a pain clinic. (R. at 136.) On April 18, 2003, Wright complained of back pain. (R. at 133.) He reported that his medication was helping his back pain. (R. at 133.) He further reported that he was doing well and that he was active and healthy. (R. at 133.) Examination of Wright's back showed lower lumbar tenderness with spasm and positive straight leg raising. (R. at 133.) He was diagnosed with chronic low back pain, psoriasis and intermittent knee pain. (R. at 133.) Dr. Clary recommended that Wright remain as active as possible and lose weight. (R. at 133.)

On August 1, 2003, Dr. Clary completed an assessment indicating that Wright could occasionally lift and carry items weighing 10 pounds and frequently lift and carry items weighing less than 10 pounds. (R. at 143-46.) He indicated that Wright could stand and walk less than two hours each in an eight-hour workday. (R. at 143.) He indicated that Wright would require the opportunity to alternate between sitting and standing. (R. at 144.) Dr. Clary indicated that Wright's ability to push and pull was limited in both his upper and lower extremities. (R. at 144.) He indicated that Wright could occasionally balance and never climb, kneel, crouch, crawl or stoop. (R. at 144.) He also limited Wright to working around temperature extremes, vibration, humidity and hazards. (R. at 146.) Dr. Clary also completed a pain assessment indicating that Wright's pain was incapacitating. (R. at 147.) He indicated that physical activity increased pain to the extent that medication and/or rest was necessary. (R. at 147.) He also indicated that medication impacted Wright's work ability by severely limiting his effectiveness in the workplace due to distraction in attention and drowsiness. (R. at 147.) On September 19, 2003, Wright complained of being depressed. (R. at at 148.) He reported that he continued to suffer from back pain. (R. at 148.)

The record shows that Dr. Dennis Aguirre, M.D., administered six L4-L5 and L5-S1 facet injections between October 2002 and January 2003. (R. at 114-24, 177-79.) Wright reported that he received no benefit from these injections. (R. at 117.)

On October 15, 2002, Dr. Ronald L. Hedderich, M.D., saw Wright for complaints of low back pain and knee pain. (R. at 121-24.) Wright reported that the coal mining company that he worked for closed in July 2002 and that he had been unemployed since that time. (R. at 121.) Wright reported that his pain was exacerbated

-6-

by bending, standing or sitting for long periods of time, twisting maneuvers, stress, when he became emotionally upset, depression and changes in the barometric pressure. (R. at 121.) Examination of Wright's back showed no muscle spasms, tenderness or trigger points. (R. at 123.) Dr. Hedderich diagnosed low back pain with spondylosis at the L5-S1 level. (R. at 123.) He administered a lumbar epidural steroid injection on October 18, 2002. (R. at 181-82.)

On April 10, 2003, Dr. Randall Hays, M.D., a state agency physician, indicated that Wright had the residual functional capacity to perform medium work. (R. at 125-32.) He indicated that Wright had a limited ability to push/pull with the upper extremities. (R. at 126.) Dr. Hays indicated that Wright could frequently climb ramps and stairs and never climb ladders, ropes or scaffolds. (R. at 127.) He indicated that Wright's ability to reach in all directions was limited on his left side. (R. at 128.) No visual, communicative or environmental limitations were noted. (R. at 128-29.) This assessment was affirmed by Dr. F. Joseph Duckwall, M.D., another state agency physician, on June 18, 2003. (R. at 132.)

In April 2003, John W. Ludgate, Ph.D., a licensed clinical psychologist, saw Wright for his complaints of nervousness and depression. (R. at 203-17.) Wright reported that he had been depressed since being laid off from work. (R. at 203.) Ludgate diagnosed major depressive disorder, single episode, and generalized anxiety disorder. (R. at 213.) He indicated that Wright had a then-current Global Assessment of Functioning, ("GAF"), score of 50.[3] (R. at 213.) In October 2003, Ludgate reported

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has

-7-

that Wright appeared depressed. (R. at 150.) He reported that Wright's attention span was somewhat limited and that his judgment and insight were good. (R. at 150.) He diagnosed major depression, moderate, and generalized anxiety disorder. (R. at 152.) He reported that Wright was unable to work due to a number of physical and psychiatric problems. (R. at 152.)

Ludgate completed a mental assessment indicating that Wright had a more than satisfactory ability to maintain personal appearance. (R. at 153.) He indicated that Wright was limited but satisfactory in his ability to follow work rules, to use judgment, to function independently, to understand, remember and carry out simple job instructions and to demonstrate reliability. (R. at 153.) Ludgate reported that Wright was seriously limited, but not precluded, in his ability to relate to co-workers, to deal with the public, to interact with supervisors, to understand, remember and carry out detailed instructions and to relate predictably in social situations. (R. at 153.) He indicated that Wright had no ability to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex instructions and to behave in an emotionally stable manner. (R. at 153.)

On September 10, 2003, Dr. John Whiteley, M.D., saw Wright for complaints of increased back pain. (R. at 187-88.) Dr. Whiteley reported that Wright had tenderness over the lumbosacral area. (R. at 187.) He diagnosed left L4-L5 and L5-S1 facet arthropathies. (R. at 187.)

On April 1, 2004, Robert S. Spangler, Ed.D., a licensed psychologist, and Kathy

---

"[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-8-

J. Miller, M.Ed., a licensed psychological examiner, evaluated Wright at the request of Disability Determination Services. (R. at 225-29.) They diagnosed major depression, single episode, that appeared to be in fair pharmacological control. (R. at 228.) They assessed Wright's GAF score at 60.[4] (R. at 228.) It was reported that Wright appeared to be benefitting from medication and therapy, but he still experienced a fair amount of depression. (R. at 228.)

Spangler and Miller completed a mental assessment indicating that Wright had a mild limitation in his ability to maintain attention/concentration, to perform activities within a schedule, maintain regular attendance and be punctual, to work with or near others without being distracted, to complete a normal workday or workweek, to perform at a consistent pace and to interact appropriately with the public, supervisors and co-workers. (R. at 230-31.) They further indicated that Wright had a moderate limitation in his ability to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting. (R. at 231.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2004); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed

---

[4] A GAF of 60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2004). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2004).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 27, 2004, the ALJ denied Wright's claim. (R. at 12-18.) The ALJ found that the medical evidence established that Wright suffered from severe impairments, namely lumbar spondylosis and major depressive disorder, but he found that Wright did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ found that Wright retained the residual functional capacity to perform medium work that did not require climbing or more than limited reaching with the nondominant left arm, that involved only occasional stooping, kneeling, crouching or crawling and could be done by an individual with the mental limitations as set out in the assessment of Spangler. (R. at 18.) Thus, the ALJ found that Wright could not perform any of his past relevant work. (R. at 18.) Based on Wright's age, education

-10-

and work history and the testimony of a vocational expert, the ALJ concluded that Wright could perform jobs existing in significant numbers in the national economy, including those of a signaler, a laundry worker, a coal sampler, a photograph finisher and a parking lot worker. (R. at 18.) Thus, the ALJ found that Wright was not disabled under the Act and was not eligible for DIB benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(g) (2004).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Wright argues that the ALJ erred by finding that he retained the residual functional capacity to perform medium work. (Brief In Support Of Plaintiff's Motion For Summary Judgment,[5] ("Plaintiff's Brief"), at 16-18.) Wright also argues that the ALJ erred by failing to find that she did not meet the listing for an affective disorder found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. (Plaintiff's Brief at 18-20.)

---

[5]Wright has not filed a motion for summary judgment in this matter.

-11-

Based on my review of the record, I reject Wright's argument that the ALJ erred by finding that his depression did not meet or equal a listed impairment. (Plaintiff's Brief 18-20.) The qualifying criteria for the listed impairment for depression is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. To meet the requirements of this section, a claimant must show that he suffers from a least four of the listed symptoms of depressive syndrome, which result in at least two of the following:

>    1. Marked restriction of activities of daily living;
>    2. Marked difficulties in maintaining social functioning;
>    3. Marked difficulties in maintaining concentration, persistence, or pace;  or
>    4. Repeated episodes of decompensation, each of extended duration.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(A)(1), 12.04(B) (2004). A claimant also may meet the requirements of this section if he has a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activities. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.04(C) (2004).

The ALJ found that Wright suffered from a major depressive disorder, but he found that Wright did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ gave little weight to the assessment of Ludgate, noting that it was not supported by Ludgate's clinical findings or by the record. (R. at 16-17.) The ALJ gave controlling weight to the assessment of Spangler and Miller. (R. at 16.)  Spangler and Miller reported that Wright's symptoms of depression appeared to be in control and

-12-

Case 1:04-cv-00103-PMS   Document 13   Filed 07/06/05   Page 12 of 14   Pageid#: 69

Wright appeared to be benefitting from medication and therapy.(R. at 228.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based on this, I find that substantial evidence exists to support the ALJ's finding that Wright did not meet or equal § 12.04.

Wright further argues that the ALJ erred by finding that he had the residual functional capacity to perform medium work. (Plaintiff's Brief at 16-18.)While the record shows that Wright suffers from a bulging disc, an MRI confirmed that he did not have a herniated disc or any nerve root compression. (R. at 121, 137.) The medical evidence shows that Wright maintained normal sensation, strength and motion function without any neurological deficits. (R. at 122-23, 133-42, 148, 169.) In September 2003, the only clinical evidence of a back impairment reported by Dr. Clary was tenderness in Wright's lower back. (R. at 148.) In addition, Dr. Clary instructed Wright to exercise, decrease his weight and take warm soaks, as Wright admitted that his back pain occurred only intermittently. (R. at 139, 141.) In April 2003, the state agency physician found that Wright had the residual functional capacity to perform medium work. (R. at 125-32.) Furthermore, in filing his application, Wright stated that he quit work only because he was laid off from his job in July 2002. (R. at 62.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Wright had the residual functional capacity to perform medium work.

*IV. Conclusion*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision to deny benefits will be affirmed.

An appropriate order will be entered.

DATED: This 6th day of July, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE